All right, thank you. So council have 15 minutes aside. Is it Miss St. Julian? Yes. All right, whenever you're ready. Thank you, Your Honor. Yes, Andrea St. Julian on behalf of the movement movement, David Thatcher. Over 20 years ago, Mr. Thatcher was just 21 years old, and he was convicted of three robberies he did not commit. Mr. Thatcher was young, poor and incarcerated. He didn't have the resources to adequately investigate and prepare a habeas to exonerate him. So not surprisingly, the pro se habeas petition he filed in the federal court in matter and discovered new evidence that Mr. Thatcher simply could not have discovered with due diligence. This new evidence makes a prime aphasia showing that a number of Mr. Thatcher's constitutional rights were violated during his trial, and that warrants habeas relief. So for that reason, Mr. Thatcher is now seeking leave to file a second habeas petition in the federal court. I want to start out by making it very clear that the habeas petition that Mr. Thatcher is seeking to file does not raise any of the issues that were or leave to file a second petition in that he has discovered new evidence that was discovered with due diligence, and that this new evidence does show that at least makes a prime aphasia showing that Mr. Thatcher had, there were constitutional violations. The question is not whether he discovered it with due diligence. The question is whether had he exercised due diligence the first time around, he would have discovered it. So address that issue. Why is, what new evidence is he proposing or proffering, and why couldn't he have found it out the first time around? Sure. I would say one of the strongest pieces of evidence is the declarations and depositions of his co-defendant, Mr. Palafox. This is the one in Mexico? Yes, he is currently in Mexico. Mr. Palafox avers that Mr. Thatcher was not his co-defendant, and neither was Mr. Patino, who was the other co-defendant. He says there was a now dead person. Yes, and he identifies who that is, Manny Andulo, and he describes him in detail. So why couldn't have Palafox been interviewed by Thatcher in preparation for trial or during the appeal? Sure, because Mr. Palafox was charged with a crime that he was not admitting at that time. He didn't admit that he had committed that crime. He did not, he pled no low contendere after Mr. Thatcher had been convicted. And even after Mr. Thatcher's conviction, he pled no low. So he still wasn't willing at that point to admit that he had committed those crimes. Is there anything in the record about that? Yes. That he wouldn't have said, I understand the record shows that he pled no low. Is there anything in the record that somebody contacted him and he said, go away, I'm not going to talk to you? No, there's no indication in the record that someone tried to contact him. Although, having been represented by counsel, I don't think there is anybody, there is not an attorney who could have contacted him. Mr. Thatcher... Well, at the trial. I'm sorry? At the trial, there was somebody who could have contacted him, right? Well, Mr. Palafox's was represented by counsel. Yes, so your client's counsel could have contacted Mr. Palafox's counsel. And if Mr. Palafox's counsel had said, go away, we're having nothing to do with you, that could have been in the record. That could have been in the record. However... But it's not. That particular thing is not in the record. However, the deposition that Mr. Palafox gave, he stated that he was not willing to admit guilt at that point. So we do have that information and we know that What he says now. That's not what he said then, because we don't know what he said then. Well, he, again, the record speaks for itself, Your Honor. He said that he was not willing to say it at that point, and that's the information that we have. And I'd like to remind the court that due diligence is not maximum diligence. And if the court believes that the trial counsel should have contacted Mr. Palafox and didn't, then that would go to an ineffective assistance of counsel claim, which is one of the claims that we make in this, what we will be making in the habeas petition. So that is one piece of... So I understand your position on Palafox. Thatcher's failure to explain why no interview of Palafox was conducted in six years is what, again? Mr. Palafox was incarcerated, as was Mr. Thatcher. There is a rule, as stated in the moving papers, that when you are incarcerated, you cannot contact another incarcerated person. We could not do that. But can an investigator for Mr. Thatcher contact Mr. Palafox? Mr. Thatcher had no money for an investigator. Did he apply for any funds to investigate? I have no idea if Mr. Thatcher knew that he was able to do that. I guess your answer is no. No, I can't say no because I actually don't have the answer to that question. There was an investigator that did do some work for him with regard to another witness. Exactly. In 2014, he re-established a relationship with his mother, and his mother agreed to pay for that investigator. And that is how that came about. But as an incarcerated person, Mr. Thatcher was very limited in what he could and could not do as a poor incarcerated person. I have a collateral kind of question. What is your position as to whether, if we wanted, for example, to look more deeply into some of these allegations, are we allowed at all, in your view, to look at the Superior Court's findings, for example, with regard to evidentiary hearings? Or do we have to just pretend they don't at this stage? Yeah, at this stage, it's really not relevant. So we can't even look at it as a discussion of what somebody may have testified to under oath? Well, I think the transcript of the evidentiary hearing is before this Court, and that is what the Court should be looking at in terms of information. So if, for example, moving to another one of your witnesses, Ms. Greer, he never left my property. I was looking at him every single second, although I guess that's not there. But are we allowed to look, for example, where the Superior Court said that for that her affidavit is plainly contradicted by counsel's newer evidence found in the 2015 Freddy Patino statement and the 2017 Palafox deposition, which both placed Mr. Palafox and Mr. Thatcher together repeatedly during the time frame of the robberies? Are we allowed to draw that conclusion ourselves? I would disagree that that is what the evidence in the record says. So the Superior Court judge got it wrong? Yes. Okay. Yes. There is nothing in the record that places Mr. Palafox and Mr. Thatcher together during the time he was at Mrs. Greer's. There's nothing in the record to support that. But no, I do agree that there's no reliance on the Superior Court's findings in this particular proceeding. And again, the Mr. Thatcher has really undertook due diligence to get that. But there's also other information. We have the information that shows false testimony on behalf of Mr. Patino and also Ms. Slayton. As to Mr. Patino, I guess my question there is also why that evidence couldn't have been pursued during the trial? I mean, Mr. Thatcher was told about Mr. Patino's interrogation by the police. He made references to his drug use. He made references to being high during the first robbery. So why couldn't your client pursue that investigation during trial? And that goes to the ineffective assistance of counsel claim. Mr. Thatcher was very clear that he had provided his trial counsel with the names of witnesses that he wanted the attorney to look at and review. Also, the trial counsel should definitely have cross-examined Mr. Patino. Well, he did. Trial counsel did cross-examine Mr. Patino about some of the things like, for example, drugs and memory, didn't he? He cross-examined Mr. Patino on practically nothing and he did not... He didn't cross-examine him on drug use? No, not to any extent. And what he did not do was the interrogation of Mr. Patino is a treasure trove. It was also videotaped. Trial counsel did not cross-examine and impeach him with any of that information. A rigorous review of the interrogation of Mr. Patino shows that he was fed every bit of information that he gave. He had no idea what the police were talking about. They kept asking him about robberies. He said he knew nothing about robberies. And then when they kept pressing him, he said, and asked where the robberies took place, he guessed a bar. He guessed a grocery store. He guessed several other places. He guessed at some apartments. He guessed it wrong every single time. Trial counsel failed to present any of that evidence. And even after agreeing and he would parrot what the investigators told him, even after having done that, at the end he said, you know, I really don't... I really didn't... I don't know anything about any robberies. Can I take a lie detector test to tell you, to show you that? And that was the end of the conversation. That ineffective assistance of counsel is, again, one of the worst constitutional violations. If, again, every single page of the interrogation of Mr. Patino shows he knew nothing about the robberies, and he said he didn't, he was... One week of his entire life, he spent out of his mother's care. And during that time, he was taking methamphetamines and drinking alcohol every day, so much so that he doesn't even remember what happened that week. And Mr... So is this... I'm looking at the November 20, 2019 Superior Court determination. We're talking about Mr. Patino, right? Yes. And the Superior Court judge said that Mr. Patino testified that as part of his... Could you speak in the microphone? Actually, why don't you go ahead. I don't want to eat more of your time. And I do have only two minutes left, and I do want to reserve some time. But I... But if you want to go use your time, we'll give you two minutes anyway. Okay. Oh, thank you so much. I would very much appreciate it. Mr. Patino, and not only in the interrogation, but also at trial, to some degree, he got everything wrong as to what actually happened. He didn't know where the robberies were when he was interrogated. He didn't know whether he ever saw a wallet or not. He didn't know whether a knife or a gun was used. And he would say a gun... He would say a knife when it was a gun. These are all things that were in the interrogation that should have been brought out and were not. And that's just one set of the ineffective assistance that he received from his counsel. None of that was... None of this was error. And I want to remind the court that this is a primathesia showing on just one of the constitutional errors. That's all that Mr. Thatcher needs to have this motion to file a second petition granted. He's also raised prosecutorial misconduct. He's also raised cumulative error as constitutional violations. So it isn't just merely... It isn't as if all of them have to be found to be constitutional errors by this court for him to receive relief. He can just find... This court can simply find one constitutional violation that there is a primathesia showing of just one. And Mr. Thatcher has done more than that. And for that reason, he asks that he have leave to file a second petition. All right. Thank you. And as I said, we'll give you two minutes for a rebuttal. Thank you. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. To turn to the IAC claim that is being argued just then, there's a fundamental problem that seems to be ignored, which is all these things are based on cites to the appellate record. And the appellate record was available to the petitioner when he filed his first petition. All the arguments are that the appellate record itself shows that no attorney would have done this and that petitioner was prejudiced. So if this was ever to be a claim, it had to be in the first petition, period. I don't agree with all the arguments that there was just one way for counsel to proceed. But there's no showing why this couldn't have been prime face or otherwise, why this could not have been done in the first petition, given that everything she's citing is to the appellate record. And that was fully available at the time of the first petition. I'm very happy to answer your question, but I'm otherwise content to stand on our briefing, Your Honor. Thank you, Your Honor. So I don't think you have much to rebut, but you can use your two minutes however you like. Thank you. I very much appreciate that, Your Honor. So I guess, actually, I'll start off the way I left off. And that is that Mr. Thatcher has raised a number of constitutional errors. The first, of course, is actual innocence. The next is false evidence. A freestanding claim of actual innocence is not a valid claim. You've got to show a violation of the Constitution that caused him not to be able to show actual innocence. Yes. And I would take exception with that, Your Honor. I do understand that there is an argument that actual innocence can't be made as a freestanding claim, that it's really a procedural claim. Most of, as I recall, most of our cases have said, even assuming there is such a thing, petitioner fails here. Yes. And there is no case that says that it is not cruel and unusual punishment to incarcerate someone who is actually innocent. So that would be the corollary to that. But we also have the false evidence claim, and it includes not only the false evidence of Mr. Thatcher, but the false evidence of Ms. Slayton. There is no way that Mr. Thatcher could have known that Ms. Slayton had lied before he filed his first petition. That simply is not possible. And also, it was very... I didn't quite catch you. Sure. There was no way that Mr. Thatcher could have found out that Ms. Slayton was an alcoholic or was drunk. That she had lied to the police and told them that... and also told the court that she was not intoxicated at the time. He would have no way of knowing that. How would he not have any way of knowing her if he had and asked Ms. Slayton? Well, again, that would go to an ineffective assistance of counsel claim, and that would not have been something that he would have known to investigate. All right. Thank you. We thank counsel for their arguments. The case just argued will be submitted, and we will take a five to ten minute recess and come back for our final case on the argument calendar. All rise.
judges: BEA, BENNETT, THOMAS